Mansour M. Veracruz
420 Coal, S.E. # 7
Albuquerque, New Mexico 87102
(505) 448-9252
mansourveracruz@gmail.com

FILED _____ LODGED
_____ RECEIVED
FEB 23 2015
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                                DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MANSOUR M. VERACRUZ

    Plaintiff,

- VS -

M.B. HENDRIX, et al.,
DONALD E. BAUERMEISTER, M.D.
FRANCISCAN HEALTH SYSTEMS

    Defendant (s)

CASE NO. C14-6029BHS

AMENDED COMPLAINT FOR DAMAGES CONSTITUTIONAL AND CIVIL RIGHTS VIOLATIONS SEEKING INJUNCTIVE AND DECLATORY RELIEF. MEDICAL MALPRACTICE AND 42 U.S.C. 1983 DEPRIVATION OF CONSTITUTIONAL RIGHTS.

JURY TRIAL DEMANDED

## NATURE OF THE CASE

1. This is an action for false imprisonment, false claims under 31 U.S.C. 3729 - 3733, negligence, lack of informed consent., the right to be informed originates from four primary sources. Informed consent is found under the right to privacy. The defendants gave false information to the plaintiff and removed his leg up to the groin and therefore gave false information to the government who had to pay for the surgery.

## JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Honorable Court pursuant to 28 U.S.C. 1331 and 1332(a)(1).

3. Venue in the Western District of Washington is proper under Title 42 U.S.C, 1983 and 28 U.S.C. 1391(a).

- 1 -

PARTIES

$. Claimant-plaintiff Mansour M. Veracruz is a citizen of the INITED STATES OF AMERICA and benefits at her pleasure, under her umbrella of CONSTITUTIONAL PROTECTIONS and GUARANTEES. The plaintiff currently resides at 420 Coal, S.E. #7, Albuquerque, New Mexico plaintiff was at all times mentioned in this complaint an resident of King and Peirce Counties.

5. Defendant M.B. Hendrix is a doctor employed with the Franciscan Health System (also known as ST. Joseph Hospital).

6. Defendant Franciscan Health System is a Washington Corporation authorized under the laws of Washington.

FACTUAL STATEMENT

7. In 2011 the govenor of the state of Washington called for the population of the nursing-homes to be reduced, by 577 people. The plaintiff had been a resident of Leon Sullivan Nursing Home in Seattle for five-years, and took that opportunity to leave there. They promised to acquire an apartment furnished, utilities included, and would arrange for medical. One week before The plaintiff left the nursing-home in Seattle, they told the plaintiff, "unfortunaly they could'nt get plaintiff "an voucher" to go back to Seattle and that plaintiff would have to go to Tacoma, Washington.

8. Plaintiff did'nt know anyone in Tacoma, Washington so at first plaintiff refused to leave. A couple of day's later, a woman came and carried plaintiff to what was a "senior citizen apartment building, to review. It was nice and clean, all seniors.

9. However, on the discharge date November 11, 2011 when the woman and the transport people csme to deliever me to the "senior-apartment", it turns out they hadchanged apartment, and they put me into this apartment on 12 St. Helen St., that I Had not inspected.

10. The apartment had two bedrooms and the bathroom had an four inch ledge which prevented the plaintiff from taking a shower. The toliet was to small and close to the wall.

11. The plaintiff's bowels was impacted severly. The Human Services department, had arranged for plaintiff to have a primary physician by the name of Dr, Kenneth Sahbata, the first thing the doctor did was prescrib plaintiff to a bunch of pain killers, "methadone and oxycondone.

12. It is false that plaintiff was referred to Dr. Hendrix by Dr.Shabata, There was a woman doctor, "Tam" I believe it was, this doctor was standing around in the hallway talking to his self. She said maybe this doctor can help you. Dr. Hendrix walked over gave me his card, which stated that his speciality was "fractures and wounds". But the doctor could not speak directly to plaintiff, "he would turn side-ways whild talking, and he would not look me directly in the eye. The doctor stated that maybe he would "debrive" the foot. He said that "when he debrive he really debrive". To debrive is to cut away dead flesh to as to let the wound heal.. The next day, Dr. Hendrix returned and stated that he thought plaintiff should let him cut-off plaintiff's foot. This doctor had never examined plaintiff and over night, went from wanting to debrive to wanting to cut off plaintiff's foot. He scared plaintiff so bad, that plaintiff got up and got dressed and left the hospital.

13. Plaintiff went home and during the course of the week Jim Watts, who the state of Washington Human Services had "assigned" to befriend plaintiff, He is an behavioal science counseling employee Mr. Watts has, an address at 5475 Steilcoom Blvd in Lakewood, WA 98499, lcs@wa.net (253) 537-2145 his zip is 98499. He is the person that allegedly found plaintiff "laying on the ground covered in feces" What actully occurred, is that Jim Watts, had came over and plaintiff had reached over to turn on his computer and fell out of the wheelchair and ended of on the floor. Jim Watts left plaintiff there because Watts allegedly could'nt pick the plaintiff up. He told plaintiff, "if your still laying there in the morning I'll call 911". Sure enough plaintiff was still there in the morning. Plaintiff is so disabled he could'nt get-up. When the anbulance ; arrived Jim Walls told them to take plaintiff to the hospital". Plaintiff told them he did'nt want to go, that plaintiff only wanted to be set into the wheelchair., but Mr. Watts insisted, and they fourced plaintiff onto their streacher.

14. Upon arrivel at the hospital, Mr. Watts loundly proclaimed that plaintiff's " leg had poisoned and that plaintiff, needed his leg cut-off!". As it turned out, "Dr. Hendrix was an friend of Mr. Watts. They admitted plaintiff and Dr. Hendrix was notified.

15. Again plaintiff resisted surgery, but Dr. Hendrix insisted that the leg would kill plaintiff. Attached hereto and made part of this record as "EXHIBIT A", is the disclosure request made by plaintiff and its return, the entire report attached hereto as "EXHIBIT B"
Plaintiff requested 'All Records inclueding the radiology reports, pre-surgery exam reports".

- 4 -

16. As evident in exhibit B, there was no such report. The standard procedure is that "if osteomyelitis is suspected he or she will order a bone biopsy. During a bone biopsy, a doctor takes a small sample of bone bone to send to the lab. The bone sample can be taken with a needle or by doing surgery. Often the best way to get a good bone sample is through surgery. It's important to get a good sample, because knowing what kind of germ is causing the infection can help doctors choose the right treatment."(Wolters Kluwer Health)

17. The record does not reflect any such test by the defendant The defendants asked plaintiff to sign a waiver allowing them to obtain records from Harbor View Medical center. That record showed that plaintiff had had six-years previously lost two toes to osteomyelitis. At that time an doctor 'showed plaintiff x-rays where the bone had been eaten away. Osteomyelitis is like cancer, only it effects bone matter not flesh.

19. This was a medical lynching, if there was osteomyelitis the defendant would not have had bone to cut through. At exhibit B the defendant gives an almost gleeful account of how he "sawed and cut through thefemoral bone.

20 Again the defendant presented no evidence that plaintiff'f leg need to come come off. The defendant left nine-inches, why was'nt that taken off? See, attached hereto as 'EXHIBIT C", photos of the result of the amputation. It left plaintiff so disabled until plaintiff can't lay on his side side or sit on an normal toliet

21. Thirty-days after the surgery, plaintiff had an appointment to have the 'stitches' removed. When plaintiff arrived, defendant refused to remove the stitches and told plaintiff "I gonna take no stitches out, let them people down there where you stay at take them out".

22. Them people he was spesking of was the nursing- home the hospital had sent plaintiff t. They only has one nurse that attempted to remove the stitches, nurse Wendy, it took her entire week and to this day, all of the sticthes are,nt out.

23. I asked the defendant doctor if I could get an prosthetic limb, he said" you ain't getting no prosthetic. That was the last time that I spoke with Dr. Hendrix. Plaintiff stayed in the nursing-home six month. One month later Dr. Keenth Took plaintiff off all pain relievers and plaintiff had to whithdraw, cold-turkey, it was horrible.

24. The plaintiff wil respectfully pray to enjoin the pathologist to this action as a defendant.

27. This is a case of vicarious liability with multiple defendants, the pathologist Donald E. Bauermeister, M.D. lied and falsified an post-surgical report on behalf of his friend Dr.Hendrix.

28. The Honorable Court will notice the are no record of any pathological reports prior to the amputation of plaintiff leg.

29. Plaintiff realleges paragraphs 7 through 27

30. Plaintiff believe that the defendants have violated the First and Fifth Admenment to the United States Constitution in addition to the Privacy Act 5 U.S.C. 552a. These acts are actually criminal in nature.

31. Because of the false information put into various records since the amputation plaintiff has been passed around to various nursing homes and kept heavily sedated, plaintiff have only been free of such for less than one-year.

32. Upon information and belief at the time of the amputation the doctor was suffering from Alzheimers which should have been disclosure as part of "the informed consent process."
33. The hospital knew or should have known that the defendant was "Nuts", but since he was cutting off the leg of someone they assumed did'nt have friends or family in the area, they did'nt careless. Harborview played a hand in this, when all of the evidence come in plaintiff will as to admend the complaint again to perhaps add an federal conspiracy count.

The plaintiff realleges paragraphss 27 through 32.

### PRAYER FOR RELIEF

WHEREFORE for good cause shown the plaintiff thus request

    A Enter judgement against each defendant and in favor of plaintiff for the violations alleged in this complaint.

    B Punitive Damages.

    C. Revovation of medical certification

    D.    Compensatory Damages.

Respectfully Submitted,

Mansour M. Veracruz
420 Coal, S.E. #7
Albuquerque, New Mexico 87102
(505) 448-9252
mansourveracruz@gmail.com

-7-

February 15, 2015


# CHI Franciscan Health
*Our best care. Your best health.*

HIM - Release Of Information Dept.
1149 Market St. MS: 06-08 Tacoma, WA 98402
Phone: 253-792-2400 Fax: 253-792-4993

## Authorization to Release Information

I, **Mansour M. Veracruz**, the PATIENT / LEGAL REPRESENTATIVE hereby authorize the following

Clinic Name: **FOA**  Address: **1608 S J St  4th floor**
City: **Tacoma**  Zip: **98405**  Phone #: **253 274-7504 14**  Fax #: **253 274-7896**

TO RELEASE INFORMATION FROM THE HEALTH RECORD OF: **Mansour M. Veracruz**
(Patient Name)                                    (Date of Birth)

| DATES TO BE RELEASED | INFORMATION TO BE RELEASED |
|---|---|
| ☐ Most recent two years<br>☐ Most recent five years  **Dr. Hendrix**<br>☒ All dates<br>☐ Specific dates for care received: **1-30-2012**<br>FROM **1/1/2012** THROUGH **2-10-2012** | ☒ ALL RECORDS    ☒ LAB REPORTS<br>☐ CHART NOTES    ☒ RADIOLOGY REPORTS<br>☐ EKGS                   ☐ MEDICATION LISTS<br>☐ CONSULTATIONS  ☐ IMMUNIZATIONS<br>☐ SPECIFIC ITEMS: **Pre Surgery exam** |

If requesting a copy of your own records, how would you like to receive the information?   **X** Paper    **X** CD

### PLEASE CHECK ONE OF THE FOLLOWING OPTIONS:
☐ PATIENT WILL PICK UP AT ST. JOSEPH'S MEDICAL CLINIC - **1708 S YAKIMA AVE LOBBY LEVEL TACOMA, WA 98405**

☒ FMG WILL MAIL RECORDS TO THE FOLLOWING INDIVIDUAL OR ORGANIZATION

Name / Organization: **Mansour M. Veracruz**    Phone: **505-4489252**  Fax: _____
Address: **420 Coal, S.E. # 7**    City: **Albuquerque**  State: **New Mexico**  Zip: **87102**

### FOR THE PURPOSE OF:
☒ Continuing Care     ☐ Insurance Billing     ☒ Legal Matters     ☐ Other: _____

**SENSITIVE INFORMATION:** I understand that my express consent is required to release any health care information relating to testing, diagnosis, and/or treatment for HIV (AIDS virus), sexually transmitted diseases, psychiatric disorders/mental health, or drug and/or alcohol use. If I have been tested, diagnosed, or treated for HIV (AIDS virus), sexually transmitted diseases, psychiatric disorders/mental health, or drug and /or alcohol use, you are specifically authorized to release all health care information relating to such diagnosis, testing or treatment.

**DISCLOSURE:** I understand that authorizing the use or disclosure of the information identified above is voluntary. I need not sign this form to ensure healthcare treatment. I understand that once the above information is disclosed, the information may not be protected by federal privacy laws and may potentially be re-disclosed by the recipient.

**REVOCATION:** I understand that I may revoke this authorization at any time by notifying the Health Information Management Dept. at Franciscan Health System in writing or by completing the *Revocation of Authorization* form. I understand that the revocation will not apply to information that has already been released in response to this authorization.

**EXPIRATION:** This authorization will expire when the request has been filled.

*Mansour M. Veracruz*    **12-24-2014**
PATIENT / LEGAL REPRESENTATIVE SIGNATURE       DATE

Relationship (if other than patient) _____    Phone # _____

### FACILITY STAFF USE:
Request Received By: _____    Date: _____
Type of photo identification verified: Driver's License _____ Military ID _____ Other _____ Employee Initials: _____
Authorized representative notified that records were ready: Date _____    Employee Initials: _____

SIGNATURE of Authorized Representative Picking up Records _____    DATE: _____
Type of photo identification verified: Driver's License _____ Military ID _____ Other _____

**EXHIBIT A**

600 085

*All action times shown on this page are in Pacific Standard Time.*

———— Elysium Results forwarded by Maecenas Hendrix on 01/11/2012 01:39:08 PM ————

**Elysium FINAL DICTATION RESULTS FROM ELYSIUM TRANSCRIPTION**  CHART COPY

Name: **VERACRUZ, MANSOUR MANAR**
Gender: **M**  Age: **64 Years**
Address: **29 ST HELENS AVE APT 512**  Born:
**TACOMA, WA 98402**
Home: **(253) 301-3767**  Email:

MRN or ID: **62632971-1  [16916]**
**005274444867 [Elysium]**

**This document has been signed by Maecenas Hendrix, MD on 11-Jan-2012 01:39 PM.**
**Ordered Routine by Maecenas Hendrix**
*All clinical times shown on this page are in Pacific Standard Time.*
**Chart Note**
Service/Procedure Date: **09-Jan-2012 12:00 AM**

SUBJECTIVE: Mr. Veracruz is somebody that I saw as a consultant in the hospital. He has a paraplegia due to some type of spinal abscess compounded by diabetes. He has a nonhealing diabetic infection along with a Charcot deformity of the right ankle and has had a septic right knee which destroyed the cartilage. I recommended when he was in the hospital before that he have an above-the-knee amputation on the right. He already has a below-the-knee amputation on the left. He went home and said he did not want to have surgery, but now is back. Once again his home care has been spotty, not much wound care, and when he left the hospital he told me he is going to go back to Harborview and get them to amputate his leg when he was ready, but now he said that he would like to have his leg amputated and he does not want to go back to Harborview.

PLAN: I did not take him out of his wheelchair, but told him that he probably needs to go back in the hospital and if he wants an amputation that I will do it, but also that he will have to go skilled nursing afterwards and he agrees to this. Hopefully we can get him admitted today and maybe do his surgery tomorrow.

R&T: 01/10/2012 D: 01/09/2012

---

ATMS-8QELBU ATMS-8QELBU.HL7  mbh_ajk011012_0
TNI Transcription  tni:ajk
 CKCIGDIHIEH



femoral/popliteal artery and cross sections of anterior and posterior tibial
arteries, A5 - representative section of bone underlying plantar surface
ulceration submitted for decalcification prior to permanent section, A6 -
shave of proximal bone resection margin submitted for decalcification prior to
permanent section.
BS/jw   1-27-12

MICROSCOPIC DESCRIPTION:
Slide reviewed.  Microscopic supports the final diagnosis.
DB/dk    1/31/12



Donald E Bauermeister, M.D.
Pathologist
Electronically signed 1/31/2012


Date/time of specimen receipt: 26-Jan-2012 04:21 PM    Date/time of report: 31-Jan-2012 01:56 PM    Relevant Clinical Information: Data not supplied

---

0001202605390 20120131140806_20804.fhslab_o 1            009068019
Lab Processing MLR                                        8010001
                                                          CKCIGDIHIEH



12/30/2014

MACROSCOPIC DESCRIPTION:
Received fresh labeled with the patient's name and designated "right above-the-knee amputation" is a right above the knee amputation measuring 73.5
cm from the bone and soft tissue resection margins to the heel and 29.5 cm
from the heel to the tip of the great toe. The skin overlying the leg and
foot is darkly pigmented. The bone and soft tissue resection margins grossly
appear viable. Involving the right lateral aspect of the thigh is a 5.0 x 2.5
cm ulceration. The ulcerative bed is lined by purulent appearing yellow to
pink-gray exudate. Extension of the ulceration to the underlying bone is not
identified. Present on the medial aspect of the ankle is 2.0 cm in greatest
dimension ulceration which also appears relatively superficial and does not
extend to the underlying bone. The bed of the ulcer is covered by a purulent
exudate. The plantar surface of the foot is remarkable for a 10.5 x 7.5 cm
ulceration. This ulcerative bed is covered by a green to yellow fibrinopurulent exudate. This ulceration extends deep into the soft tissue
and up to the bone. The ulceration is surrounded by raised, indurated and
hypopigmented skin. The foot has three toes. Toes 2 and 4 are surgically
absent. The surgical sites of the amputation are well healed and grossly
unremarkable. The skin overlying the foot is remarkable for a bosselated like
appearance and scale-like appearance.

Dissection of the vasculature of the specimen reveals a moderate atherosclerotic plaque formation of the distal femoral/popliteal artery
resulting in at least 50% stenosis of the arterial lumen. Cross sections of
the anterior and posterior tibial arteries reveals minimal atherosclerotic
plaque formation. Stenosis of the arterial lumen is not grossly identified.
Sectioning of the bone underlying the ulceration present on the plantar
surface of the foot reveals softening.

Summary of sections:  A1 - anterior and posterior soft tissue resection
margins, A2 - representative sections of ulceration involving lateral aspect
of thigh and medial aspect of lower leg, A3 - representative sections of
ulceration involving plantar surface of foot, A4 - cross sections of distal



40358
D: Wed Feb 01 18:53:53 2012 PST
T: Thu Feb 02 07:55:27 2012 PST
46822468 /46822468
cc:

\*\*\* PRELIMINARY REPORT \*\*\*

---

| 46822468 20120202080124_4702.fhstm 1<br>Hospital Transcription | 46822468<br>400<br>CKCIGDIHIEH |



*All action times shown on this page are in Pacific Standard Time.*

**Elysium FINAL TRANSCRIPTION RESULTS FROM ST JOSEPH MEDICAL CENTER**   CHART COPY

Name: **VERACRUZ, MANSOUR M**
Gender: **M**   Age: **64 Years**
Address: **29 ST HELENS AVE APT 512**   Born:
**TACOMA, WA 98402**
Home: **(253) 301-3767**   Email:

MRN or ID: **940216396**   [SJMC]
**005274444867** [Elysium]

Ordered by **Maecenas B Hendrix**
Attending: **Nellie Nanda**

*All clinical times shown on this page are in Pacific Standard Time.*

**OPERATIVE REPORT**

Visit #: **1202202485**
Service/Procedure Date: **22-Jan-2012 12:00 AM**

MEDICAL RECORD NUMBER: 940216396
ACCOUNT NUMBER: 1202202485

*** PRELIMINARY REPORT ***
DATE OF PROCEDURE: 01/30/2012
SURGEON: Maecenas B Hendrix, MD
ANESTHETIC: General.
ANESTHESIOLOGIST: Christina L Szigeti, MD and Russell R Holtz, MD

PREOPERATIVE DIAGNOSIS: Wound hematoma, right above knee amputation stump.

POSTOPERATIVE DIAGNOSIS: Wound hematoma, right above knee amputation stump.

OPERATION PERFORMED: Incision and drainage of wound hematoma right amputation stump.

DESCRIPTION OF PROCEDURE: The patient was taken to the operating room in his bed and given a general anesthetic and then transferred to the operating table in the supine position. The amputation stump on the right was above the knee fairly short. It was 4 days postop and he had a sort of a bulbous swelling on the medial side. The stump was prepped to the groin and sterilely draped using split sheets, and then I removed the sutures from the medial 1/2 of the suture line and evacuated a fairly large hematoma. There was no sign of active bleeding. I removed a couple of deep sutures and did not find any active bleeding from under the muscle layer. I cultured the wound and then I irrigated it and inserted a drain which went under the deep fascial layer. The wound was then closed using 1 Vicryl to close the deep fascia, and 2-0 nylon interrupted mattress sutures for the skin. A sterile dressing was applied, and the patient was transferred back to his bed, where the anesthetic was reversed and he was taken to recovery room in satisfactory condition. He tolerated the procedure well. The blood loss from the surgery was minimal although the hematoma was probably 2-300 mL.

Maecenas B Hendrix, MD







